**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾

**MELISSA MOORE,**

                    **Plaintiff,**

           **v.**

**MADISON REED, INC.,**

                    **Defendant.**
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾

                              **1:22-cv-115**
                              **(GLS/DJS)**

**APPEARANCES:**                    **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Reese LLP                           GEORGE GRANADE, ESQ.
8484 Wilshire Boulevard - Suite 515
Los Angeles, CA 90211

100 W. 93rd - 16th Floor            CARLOS RAMIREZ, ESQ.
New York, NY 10025                  MICHAEL R. REESE, ESQ.

**FOR THE DEFENDANT:**
Shook, Hardy & Bacon LLP            AMIR NASSIHI, ESQ.
555 Mission Street - Suite 2300
San Francisco, CA 94105

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I.  Introduction

Plaintiff Melissa Moore commenced this putative class action against

defendant Madison Reed, Inc., alleging negligence, fraud, and deceptive

trade practices under New York State law, as well as violations of 15

U.S.C. § 2301.  (Am. Compl., Dkt. No. 3.)  Now pending is Madison Reed's

motion to dismiss for failure to state a claim.  (Dkt. No. 7.)  For the reasons

that follow, Madison Reed's motion to dismiss is granted in part and denied

in part.

## II.  <u>Background</u>

**A.    <u>Facts</u>**[1]

Madison Reed manufactures and sells Madison Reed Hair Color

Products (hereinafter the "Products").  (Am. Compl. ¶ 2.)  It "claims to sell

'salon' quality hair color products that use ingredients that are less 'harsh'

on hair health, as well as the health of the user, than

traditionally-formulated hair color products."  (*Id.* ¶ 3.)  In promoting the

Products, Madison Reed proclaims that they are free of certain ingredients,

such as ammonia, p-phenylenediamine (PPD), resorcinol, parabens,

phthalates, and others.  (*Id.* ¶¶ 5, 75.)  To accomplish this, Madison Reed

has replaced ammonia, PPD, and resorcinol, ingredients it characterizes

as "harsh," with ethanolamine, toluene-2,5-diamine sulfate (PTDS), and 2-

---

[1]  Consistent with the standard of review, the facts are drawn from Moore's amended complaint and presented in the light most favorable to her.

methylresorcinol, respectively.  (*Id.* ¶¶ 68-82.)  Madison Reed advertises the Products and makes its representations to consumers via "the Products' website and labeling, as well as through the marketing of the Products by mail, online, and via television and radio."  (*Id.* ¶ 8.)

Moore, prior to March 2020, had visited professional hair salons to have her hair dyed.  (*Id.* ¶ 103.)  None of these visits resulted in scalp irritation or hair loss.  (*Id.*)  Around September 2020, Moore began researching at-home hair coloring because she was unable to visit a professional hair solon due to restrictions instated during the COVID-19 pandemic.  (*Id.* ¶ 104.)  While conducting this research, Moore discovered Madison Reed's website, "which she recalls having heard advertised via satellite radio and had seen on social media platforms like Facebook."  (*Id.*) Moore, after viewing information on Madison Reed's website, "form[ed] the opinion that Madison Reed Products were gentler, safer and healthier than other hair dye companies she was researching."  (*Id.* ¶ 105.)  In addition to statements she heard in radio and television advertisements, Moore read the following statements, among others, on Madison Reed's website, which led her to form this opinion:

> We started Madison Reed with a simple mission:
> To provide the best, most luxurious hair color, ***made
> with ingredients you can feel good about.***

(*Id.* ¶ 45.)

> At the forefront of innovation, we created the first ever
> Smart 8-Free permanent hair color ***free of harsh
> ingredients: ammonia, paraben, resorcinol,*** PPD,
> phthalates, gluten, SLS, and titanium oxide.  And we
> added hair-loving nutrients including keratin, argan
> oil, and ginseng root extract to protect and pamper
> your hair.

(*Id.* ¶ 46.)

> Healthy, shiny, rich with color, beautiful hair is simply
> captivating.  And now you can get exquisite, salon
> color like this at home.  Introducing Madison Reed,
> gorgeous hair color you'll only find online.  ***We
> started by throwing out the usual harsh
> ingredients, instead Madison Reed is packed with
> all the things healthy hair loves.***

(*Id.* ¶ 48.)

> ***We have a keen interest in your well-being***.  That's
> why we design our products with ingredients that
> nurture your hair and avoid those that don't.  Our
> Italian color-makers bring a detailed eye and
> generations of experience to their craft.  The result is
> innovative color made with an unwavering
> commitment to quality that meets the strict safety
> standards put forth by the European Union (EU),
> ***which bans chemicals not proven to be safe.***
> And, we can all appreciate that.

(*Id.* ¶ 52.)[2]

> We're as passionate about what we put into our
> formulas as what we leave out.

(*Id.* ¶ 108.)

> Every part of the Madison Reed experience is lovingly
> crafted by expert colorists so you can color at home
> with total confidence.

(*Id.* ¶ 109.)

> Our color is crafted in Italy according to strict
> European Union (EU) safety standards for hair color
> formulation—meaning, ***we will never use certain
> potential ingredient offenders in our formulas.
> We opt for nourishing ingredients instead, so
> after you use our Radiant Hair Color, your hair
> won't feel dry or straw-like the way it sometimes
> can after coloring. No thank you!*** Your strands will
> actually look and feel healthier, thanks to three hero
> ingredients—keratin, argan oil, and ginseng root
> extract.

(*Id.* ¶ 110.)  Moore relied on these, and many other, representations in

deciding whether to buy the Products.  (*Id.* ¶¶ 30, 44-67, 105-11.)

    After conducting her research, Moore eventually purchased the

Products on October 27, 2020 from the Ulta Beauty website.  (*Id.* ¶ 112.)

---

    [2]  Moore alleges that part of this quote, "which bans chemicals not proven to be safe,"
was removed from Madison Reed's website sometime between July 31, 2020 and February
22, 2022, the date the amended complaint was filed.  (*Id.* ¶ 52, n.4.)  Madison Reed has not
disputed this contention.

After she received the Products, she applied them.  (*Id.*)  While applying

the Products she immediately began to lose hair—as she washed the color

out and raked her fingers through her hair, "clumps" of it fell out.  (*Id.*)

Moore noticed major hair loss near her hair line in the days that followed

her use of the Products and also suffered scalp irritation.  (*Id.*)  On May 13,

2021, Moore purchased the Products again, however, concerned that she

would suffer the same reaction, she decided not to use them.  (*Id.* ¶ 113.)

Had Moore "known the truth about the qualities of and adverse reactions

associated with the Products," she would not have purchased them on the

same terms or for the same price.  (*Id.* ¶¶ 24, 32, 225, 276.)

## B.   Procedural History

Moore commenced this action on February 7, 2022.  (Dkt. No. 1.)

On February 22, 2022, Moore amended her complaint, asserting the

following causes of action against Madison Reed: (1) a violation of the

Magnuson-Moss Warranty Act ,15 U.S.C. § 2301; (2) negligence; (3)

failure to warn; (4) design defect; (5) negligent misrepresentation; (6) a

violation of the New York Deceptive Trade Practices Act, N.Y. Gen. Bus.

Law § 349; (7) a violation of the New York Deceptive Trade Practices Act,

N.Y. Gen. Bus. Law § 350; and (8) fraud.  (*See generally*, Am. Compl.)

Madison Reed now moves to dismiss the amended complaint.  (Dkt. No.

7.)[3]

## III.  <u>Standard of Review</u>

―――――――――――――

[3]   The parties have asked the court to take judicial notice of certain pages from or screenshots of Madison Reed's website.  (Dkt. No. 7, Attachs. 2, 5, 6; Dkt. No. 12, Attachs. 1, 2.)  Madison Reed's requests that judicial notice be taken of certain legal filings in another federal court are discussed elsewhere herein and the following does not apply to those requests.  (Dkt. No. 7, Attachs. 2, 3, 4.)  A court must limit its consideration of a motion to dismiss to "facts stated on the face of the complaint, [to] documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir.1999) (citation omitted).  A court may take judicial notice at "any stage of the proceeding," of any fact "that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2), (d).  "For purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination."  *Williams v. PMA Cos., Inc.*, 419 F. Supp. 3d 471, 482 (N.D.N.Y. 2019) (quoting *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015)) (internal quotation marks omitted).  Courts also, at times, take judicial notice of web pages that are archived using a web-based tool called the Wayback Machine.  *See Thorne v. Square, Inc.*, No. 20-CV-5119, 2022 WL 542383, at *1 (E.D.N.Y. Feb. 23, 2022), *appeal withdrawn*, No. 22-542, 2022 WL 2068771 (2d Cir. Apr. 14, 2022) (collecting cases).  Therefore, the court will take judicial notice of the web pages archived using the Wayback Machine, submitted by Madison Reed as Exhibits C and D to its request.  (Dkt. No. 7, Attachs. 5, 6.)  This is because the authenticity of these exhibits has not been disputed and they purport to be a representation of the website during the relevant period that Moore alleges to have viewed it: between 2016 and May 2021, the year of the earliest dated screenshots in the complaint to when Moore purchased the Products for a final time.  (Dkt. No. 7, Attachs. 2, 5, 6; Dkt. No. 3 ¶¶ 65, 108-13.)  However, the truth of the material on said exhibits is not subject to judicial notice at this stage of the proceeding and, therefore, the court takes judicial notice only of the fact of the website's publication, not the truth of any material therein.  *See Muller-Paisner v. TIAA*, 289 F. App'x 461, 466, n.5 (2d Cir. 2008).  Therefore, the exhibits submitted by Madison Reed do not affect the court's analysis of whether Moore has stated her claims.  The court notes that, while it cannot consider the content of its website in the way Madison Reed would assuredly prefer, at this time, these factual issues may be ripe for consideration on a motion for summary judgment.  And, finally, the court does not take judicial notice of Exhibit A to Moore's request for judicial notice, the cropped and undated screenshot purportedly taken from Madison Reed's website on June 24, 2022, as this is not relevant because it is far outside the time period at issue in this case.  *See Thorne*, No. 20-CV-5119, 2022 WL 542383, at *1, n.1 (refusing to take judicial notice of screenshots of a web page that did not depict what the plaintiff viewed during the time period at issue).

The standard of review under Fed. R. Civ. P. 12(b)(6) is well settled and will not be repeated here.  For a full discussion of the governing standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010), *abrogated on other grounds by Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191 (2d Cir. 2015).

## IV.  Discussion

## A.   Magnuson-Moss Warranty Act and Common Law Fraud

In her opposition to the pending motion, Moore "dismisses" her causes of action for violation of the Magnuson-Moss Warranty Act,15 U.S.C. § 2301, and common law fraud.  (Dkt. No. 12 at 3, n.1.)  To the extent that Moore seeks to invoke the voluntary dismissal contemplated by Fed. R. Civ. P. 41(a)(1)(A)(i), in an attempt to escape a dismissal with prejudice, her effort is stifled by her failure to file a proper notice of voluntary dismissal or a stipulation of dismissal signed by all parties. *See* Fed. R. Civ. P. 41(a)(1)(A)(i)-(ii).

Because Moore has not opposed the motion insofar as it seeks dismissal of these two causes of action, if Madison Reed's arguments in support of dismissal are facially meritorious, Moore's Magnuson-Moss and

8

common law fraud claims must be dismissed.  *See Johnson v. Lew*, No. 1:13-CV-1072, 2015 WL 4496363, at *5 & n.6 (N.D.N.Y. July 23, 2015) ("In this District, when a non-movant willfully fails to oppose a legal argument asserted by a movant, the movant's burden with regard to that argument is lightened, such that, in order to succeed on that argument, the movant need only show that the argument possess[es] facial merit, which has appropriately been characterized as a modest burden.").  The court finds that Madison Reed has met this lightened burden.

Madison Reed makes a number of arguments in favor of its motion to dismiss Moore's claim for violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301.  First, it contends that Moore has not met the requirement that she plead the existence of a written warranty, that its advertising materials which describe a product's contents and do not provide a warranty concerning material or workmanship are not actionable, and that Moore fails to allege Madison Reed's representations were inaccurate.  (Dkt. No. 7, Attach. 1, at 21-23.)  Next, Madison Reed asserts that, "[i]n the event [Moore] seeks to allege breach of warranty on the basis of her alleged skin irritation and hair loss," this claim fails because, not only is the amended complaint devoid of a warranty that such adverse reaction

would not occur, "but Madison Reed expressly advised [her] that such reactions were possible." (*Id.* at 23, citing Am. Compl. ¶ 30.)  And, Madison Reed further argues that, to the extent Moore seeks to assert a claim based on the implied warranty of merchantability, such a claim would fail for lack of privity.  (*Id.*)  Finally, it contends that Moore's Magnuson-Moss claim is not viable "because she fails to allege the jurisdictional prerequisites to plead this claim in federal court."  (*Id.* at 24.)  Given that Moore does not object to the facially meritorious case law presented by Madison Reed in support of these arguments to dismiss her Magnuson-Moss claim, this claim is dismissed.  *See Johnson*, No. 1:13–CV–1072, 2015 WL 4496363, at *5 & n.6.

As to common law fraud, Madison Reed asserts that Moore has failed to allege materially deceptive conduct and, even if she had, she has not alleged fraudulent intent, as she must.  (Dkt. No. 7, Attach. 1 at 12-13.)  Seeing as Moore has not objected to the facially meritorious case law presented in support of these arguments either, her common law fraud claim is dismissed too.  *See Johnson*, No. 1:13–CV–1072, 2015 WL 4496363, at *5 & n.6.

**B.    New York General Business Law §§ 349 and 350**

10

Madison Reed seeks dismissal of Moore's sixth and seventh causes of action, brought under New York General Business Law §§ 349 and 350. (Dkt. No. 7, Attach. 1 at 5-11.)  Madison Reed argues that the statutory fraud claims must be dismissed because the amended complaint does not adequately allege that statements made by Madison Reed were "materially misleading."  (Dkt. No. 7, Attach. 1 at 6-11.)[4]  Additionally, Madison Reed asserts that many of the representations it made are non-actionable puffery, and that, to the extent any representations it made are not puffery, they are accurate and pose no risk of deceiving a reasonable consumer. (*Id.* at 6-7.)  In her opposition, Moore argues that the statements upon

---

[4] In support of these arguments, Madison Reed has also asked the court to take judicial notice of an amended complaint and an order, dismissing same, filed in the United States District Court for the Northern District of California in the matter of *Keppie Moore and Molly Brown v. Madison Reed, Inc.* (Northern District of California, Case No. 3:21-cv-01233). (Dkt. No. 7, Attach. 1 at 7; Attach. 2.)  And, in a letter filed on August 19, 2022, Madison Reed requests the court consider an order granting a motion to dismiss the second amended complaint in the same matter.  (Dkt. No. 17.)  The court acknowledges that these documents exist, however, it does not take judicial notice of the factual findings or legal conclusions therein.  *See Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("[A district court] may [take judicial notice of public filings in another court] on a motion to dismiss only to establish the existence of the opinion, not for the truth of the facts asserted in the opinion.").  Moreover, the court notes that the Northern District of California matter was brought pursuant to California consumer fraud statutes, which must be pleaded with particularity.  *See Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016).  As discussed herein, Moore's New York statutory fraud claims are only subject to the pleading standard contemplated by Rule 8 of the Federal Rules of Civil Procedure.  *See Tomasino v. Estee Lauder Companies Inc.*, 44 F. Supp. 3d 251, 257 (E.D.N.Y. 2014).  Indeed, among a number of other legal and factual differences, the Northern District of California found that the plaintiffs *failed to plead with particularity* that the statements on Madison Reed's website amounted to material misrepresentation, and, therefore, this decision would be unpersuasive analysis. (Dkt. No. 7, Attach. 4 at 1.)

which her claims are premised are not puffery, that she need not plead that

a statement by Madison Reed was false, just that it was deceptive, and

that she has plausibly alleged that Madison Reed's statements were likely

to deceive reasonable consumers.  (Dkt. No. 12 at 7.)

Section 349 prohibits "[d]eceptive acts or practices in the conduct of

any business, trade or commerce or in the furnishing of any service in

[New York State]."  N.Y. Gen. Bus. Law § 349(a).  Section 350 prohibits

"[f]alse advertising in the conduct of any business, trade or commerce or in

the furnishing of any service in [New York State]."  *Id.* § 350.  To

successfully state a claim under either section, "'a plaintiff must allege that

a defendant has engaged in (1) consumer-oriented conduct that is (2)

materially misleading and that (3) plaintiff suffered injury as a result of the

allegedly deceptive act or practice.'"  *Orlander v. Staples, Inc.*, 802 F.3d

289, 300 (2d Cir. 2015) (citation omitted).  Claims brought under Sections

349 and 350 "are not subject to the pleading-with-particularity requirements

of Fed. R. Civ. P. 9(b) . . . and thus are subject to the notice-pleading

requirements of Fed. R. Civ. P. 8(a)."  *Tomasino v. Estee Lauder*

*Companies Inc.*, 44 F. Supp. 3d 251, 257 (E.D.N.Y. 2014) (internal

quotation marks and citations omitted).

The requirement that the conduct be consumer-oriented is broad, therefore, Sections 349 and 350 have been construed to apply to virtually all economic activity.  *See Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 94 (S.D.N.Y. 2021).  Moore has alleged that Madison Reed manufactures, markets, and sells the Products to consumers, (*see, e.g.*, Am. Compl. ¶¶ 2, 8, 27), and, Madison Reed does not dispute that its alleged conduct was consumer-oriented, therefore, the court is satisfied that Madison Reed's conduct satisfies the first prong of this analysis.[5]  *See Orlander*, 802 F.3d at 300 (accepting the satisfaction of this prong when it was undisputed)*.

New York courts apply an objective standard to determine whether acts or practices are materially deceptive or misleading; a plaintiff must plead that the alleged act is "likely to mislead a reasonable consumer acting reasonably under the circumstances."  *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.*, 37 N.Y.3d

---

[5]  To the extent Madison Reed has challenged the adequacy of Moore's pleading of the third prong, whether actual injury was suffered, the court finds that Moore has pleaded facts to support that prong as well.  *See Ackerman v. Coca–Cola Co.*, No. 09-CV-0395, 2010 WL 2925955, at *23 (E.D.N.Y. July 21, 2010*) (explaining that the third prong may be satisfied "by a claim that a plaintiff paid a premium for a product based on [the] defendants' inaccurate representations.").  This is because Moore has pleaded, in at least one instance, that she was injured when she paid . . . a price premium for the Products that did not deliver what [Madison Reed] promised."  (Am. Compl. ¶ 41.)

169, 178 (2021) (citation omitted); *see Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 149 (S.D.N.Y. 2022).  To determine whether a reasonable consumer would be misled, "[c]ourts view each allegedly misleading statement in light of its context on the product label or advertisement as a whole."  *Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 802 (S.D.N.Y. 2021) (quotation marks and citation omitted).  To put it more colorfully, "[t]he entire mosaic is viewed rather than each tile separately." *Wurtzburger v. Ky. Fried Chicken*, No. 16-CV-08186, 2017 WL 6416296, at *3 (S.D.N.Y. Dec. 13, 2017) (internal quotation marks and citation omitted).

However, and crucially, while it is possible for a court to determine that an allegedly deceptive advertisement would not have misled a reasonable consumer as a matter of law, "this inquiry is generally a question of fact not suited for resolution at the motion to dismiss stage." *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020); *see Anderson v. Unilever U.S., Inc.*, 607 F. Supp. 3d 441, 452 (S.D.N.Y. 2022) ("Notably, whether an interpretation is unreasonable as a matter of law is generally reached at [the motion to dismiss] stage only where, for instance, a plaintiff's claims as to the impressions that a reasonable

14

consumer might draw are patently implausible or unrealistic.") (internal quotations and citations omitted).  Indeed, the Southern District of New York held in *Buonasera v. Honest Co.*, that the question of whether labels on hair care products were misleading under N.Y. Gen. Bus. Law §§ 349 and 350 was a question of fact to be resolved by the jury instead of on a motion to dismiss—the current procedural posture of this case.  *See* 208 F. Supp. 3d 555, 566 (S.D.N.Y. 2016) (noting that "[c]ourts have generally held that since this second factor requires a reasonableness analysis, it cannot be resolved on a motion to dismiss").

Having viewed the entire mosaic, the court cannot hold that, as a matter of law, a reasonable consumer could not have been deceived by Madison Reed's statements regarding the Products.  While many of Madison Reed's statements are indisputably puffery, there are a number that are plausibly actionable statements that, with the allegations taken as true, require denial of a motion to dismiss.  For example, Madison Reed's statements that it is an "honest" company and that the Products are made with "ingredients you can feel good about" are subjective statements of opinion that likely amount to mere puffery.  (Am. Compl. ¶¶ 44, 45); *see MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 96-97 (2d

Cir. 2023).

On the other hand, Madison Reed's description of the Products as "non-damaging" and its representation that they contain "[n]o [h]arsh [i]ngredients," are representations of fact and not merely subjective opinions.  (Am. Compl. ¶¶ 64, 66, 70-82.)  Additionally, by way of another example, taking the facts pleaded as true, until at least July 31, 2020, and "likely after that," Madison Reed's website stated that the Products "meet[] the strict safety standards set by the European Union (EU), *which bans chemicals not proven to be safe*."  (*Id.* ¶ 65 (emphasis added).)  The logical conclusion drawn from this representation would be that the chemicals in the Products are *proven* to be safe—an actionable statement capable of deceiving.  Because Moore has pleaded that Madison Reed made these representations and that she was deceived by them, the court cannot dismiss her claims under Sections 349 and 350 at this juncture, as it is not in a position to determine, as a matter of law, whether a reasonable consumer could have been deceived.  *See Duran*, 450 F. Supp. 3d at 346; *Anderson*, 607 F. Supp. 3d 441 at 452; *Buonasera*, 208 F. Supp. 3d at 566.

Additionally, Madison Reed's reliance on *Tomasino* and other cases

dismissing Sections 349 and 350 claims, is misplaced because the amended complaint does not suffer from the same pleading deficiencies. 44 F. Supp. 3d 251.  Put simply, in *Tomasino* the plaintiff did not provide factual allegations explaining how any representations were false or misleading; instead, the plaintiff merely provided conclusions that they were.  See *id.* at 263.  Here, Moore has explained exactly why she alleges the representations made to consumers are misleading/deceptive.  (Am. Compl. ¶¶ 30, 40.)  And, taking the facts as pleaded to be true, Moore has met her burden.

Finally, the court is not convinced by Madison Reed's argument that merely because it is technically true that the Products do not contain ammonia, PPD, or resorcinol, that the labeling and advertising of the Products could not, as a matter of law, be deceptive.  (Dkt. No. 7, Attach. 1 at 7-11; Dkt. No. 13 at 2-3.)  As the Second Circuit explained in *Mantikas v. Kellogg Co.*, "[r]easonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box," or, here, on a website.[6]  910 F.3d 633, 637 (2d Cir. 2018) (citation omitted).

---

[6] In the same vein, Madison Reed argues that Moore has not alleged she relied on any content on the Product's packaging, (Dkt. No. 7, Attach. 1 at 8), however, this is not true, (Am.

Regardless, as Moore has pointed out, (Dkt. No. 12 at 7), literal truth alone is not an availing defense to these claims.  *See People ex rel. Spitzer v. Gen. Elec. Co.*, 302 A.D.2d 314, 315 (1st Dep't 2003).

Here, the question of whether Madison Reed's representations about the Products are materially misleading or deceptive is a question of fact that cannot be resolved on a motion to dismiss.  And, Moore having adequately pleaded the elements to state claims under N.Y. Gen. Bus. Law §§ 349 and 350, the motion is denied as to Moore's sixth and seventh causes of action.[7]

## C.   Negligent Misrepresentation

Madison Reed contends that Moore has failed to state a claim for negligent misrepresentation because she has not sufficiently pleaded, with particularity, that it owed her a duty.  (Dkt. No. 7, Attach. 1 at 14.) Specifically, Madison Reed argues that Moore has not met New York's requirement that there be privity of contract or a relationship between the parties that was "'so close as to approach that of privity.'"  (*Id.*, quoting

---

Compl. ¶ 118), and the court, therefore, affords this argument no weight.

[7]  The court having rejected Madison Reed's contention that Moore has failed to plausibly plead that Madison Reed made materially misleading or deceptive statements in support of her claims under Sections 349 and 350, Madison Reed's argument that Moore's remaining claims fail for the same reason is, necessarily, rejected.  (Dkt. No. 7, Attach. 1 at 11-12.)

*Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114 (2d Cir. 2012).)

Moore argues that she has adequately pleaded negligent

misrepresentation because Madison Reed "possessed a

unique/specialized expertise with respect to hair color products and

because it intended for [p]laintiff to rely on its representations when

deciding to purchase the Products."  (Dkt. No. 12 at 14.)

Under New York law, it is well-settled that to state a claim for

negligent misrepresentation, a plaintiff must plead: "(1) the existence of a

special or privity-like relationship imposing a duty on the defendant to

impart correct information to the plaintiff; (2) that the information was

incorrect; and (3) reasonable reliance on the information."  *Mandarin*

*Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 180 (2011) (citations omitted);

*see Anschutz Corp.*, 690 F.3d at 114.  The relationship of an ordinary

buyer and seller is not sufficient to support a negligent misrepresentation

claim.  *See Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 788 (2d

Cir. 2003) ("[T]he law of negligent misrepresentation requires a closer

degree of trust between the parties than that of the ordinary buyer and

seller in order to find reliance on such statements justified.") (citation

omitted).  Even a defendant's "status as a trusted brand" or as a

manufacturer of a product cannot be the basis to establish the requisite status. *Anderson*, 607 F. Supp. 3d at 461 (internal quotation marks and citations omitted) (collecting cases).

Moore primarily relies on *Greene v. Gerber Prod. Co.*, 262 F. Supp. 3d 38 (E.D.N.Y. 2017), to support her argument that a special relationship existed between herself and Madison Reed, so as to create a duty upon which she reasonably relied, and overcome the general rule that the relationship between a buyer and seller does not create a duty sufficient to state a claim for negligent misrepresentation.  (Dkt. No. 12 at 14-15.) However, the facts here are clearly distinct from those in *Greene*.  In *Greene*, the plaintiff alleged that the defendant's representations "as advertised, were rejected by the FDA and that [the d]efendant was in a unique position to know that," because the defendant was aware of a major study that "conclusively refuted" its representations, and, in fact, it sponsored and funded said study.  262 F.3d at 76.  This, the court held, gave rise to a special relationship that created a duty sufficient to plead negligent misrepresentation.  *Id.*

Moore merely pleads that Madison Reed is "well-aware" of studies, by an organization with no discernable connection to Madison Reed, that

show its ingredients may have a similar "toxicity rating" to that of the ingredients they replaced.  (Am. Compl. ¶¶ 10, 68, 71.)  Nowhere does Moore plead that Madison Reed was in a special position to be acutely aware of studies, which it funded, that directly refute its scientific assertions—instead, Moore merely alleges that there exist some studies that show ingredients used in the Products are harmful in similar ways to ingredients used in all hair dyes.  (Am. Compl. ¶¶ 10, 14, 68, 71-82.) These facts simply do not rise to the unique facts of *Greene* and, therefore, do not create the type of special relationship necessary to support a negligent misrepresentation claim between a buyer and seller.

The court also agrees with Madison Reed's contention that the other cases upon which Moore relies do not support the conclusion that a special relationship existed and that the relationship between Madison Reed and Moore is more accurately characterized as that of a run of the mill arms-length commercial transaction.  (Dkt No. 13 at 6-7.)  Therefore, for these reasons, the motion is granted as to Moore's negligent misrepresentation claim.

**D.    Negligence—The Economic Loss Rule**

Madison Reed argues that Moore's negligence claims—her second,

21

third, and fourth causes of action—are barred by the economic loss rule because she has not pleaded any damages besides economic damages. (Dkt. No. 7, Attach. 1 at 15-16.)  In opposition, Moore contends that the economic loss rule does not apply because she, in addition to pleading that she overpaid for the Products, "suffered damages by way of injuries to her scalp and the loss of hair."  (Dkt, No. 12 at 16.)

The economic loss rule "provides that where only economic loss with respect to a product itself is alleged and the underlying transaction is a sale of goods, the purchaser is limited to its contractual remedies and may not maintain the traditional tort causes of action of negligence or strict products liability." *See Cincinnati Ins. Co. v. Emerson Climate Techs., Inc.*, 215 A.D.3d 1098, 1100 (3d Dep't 2023) (citations omitted).  However, the doctrine permits recovery in tort where physical injury is alleged to have been suffered.  *Id.* at 1100-01 (collecting cases).  Here, Moore has alleged she suffered physical injuries in the form of injuries to her scalp and hair loss, not merely economic loss,  (Am. Compl. ¶¶ 30, 112), which, at this stage, is sufficient to compel denial of the motion as to this argument.

**E.** **Negligent Failure to Warn**

As for Moore's third cause of action, Madison Reed argues that she

22

has failed to state a claim because she was adequately warned about the commonly-known and foreseeable risks of using permanent hair dye, and that, in fact, the amended complaint itself confirms she was warned precisely of what she alleges occurred.  (Dkt. No. 7, Attach. 1 at 16.) Madison Reed also argues that Moore did not allege that she heeded the existing warning label present on the Products and, therefore, cannot state a claim for failure to warn.  (*Id.* at 17-19.)  Moore contends that these arguments fail because Madison Reed, with knowledge that its replacement ingredients for ammonia, PPD, and resorcinol, were no better, or perhaps worse, than those they replaced, "engaged in an aggressive and protracted marketing and advertising campaign" touting to have removed "harsh ingredients" while failing to disclose and disguising the risks associated with the aforementioned replacement ingredients.  (Dkt. No. 12 at 20-21.)

New York law requires a plaintiff to plead that "(1) a manufacturer has a duty to warn (2) against dangers resulting from foreseeable uses about which it knew or should have known, and (3) that failure to do so was the proximate cause of the harm," to state a claim failure to warn.  *State Farm Fire & Cas. Co. v. Nutone, Inc.*, 426 F. App'x 8, 10 (2d Cir. 2011)

(citing *Liriano v. Hobart Corp.*, 92 N.Y.2d 232, 237(1998)).  Importantly, "[t]he adequacy of the warning in a products liability case based on a failure to warn is, in all but the most unusual circumstances, a question of fact to be determined at trial."  *Candelaria v. Conopco, Inc.*, No. 21-CV-6760, 2023 WL 2266047, at *4 (E.D.N.Y. Feb. 28, 2023) (citation omitted).

In support of its argument that Moore's failure to heed a warning on the Products necessitates dismissal of her failure to warn claim, (Dkt. No. 7, Attach. 1 at 17-19), Madison Reed points to the warning label on the Products, as pictured in the amended complaint, which states: "IMPORTANT SAFETY WARNINGS . . . ALL PERMANENT HAIR COLOR CONTAINS INGREDIENTS WHICH CAN CAUSE AN ALLERGIC REACTION, WHICH IN RARE CASES CAN BE SEVERE . . . CONDUCT A SKIN ALLERGY TEST 48 HOURS BEFORE EACH TIME YOU COLOR." (*Id.* at 17; Am. Compl. ¶ 37.)  Madison Reed cites numerous cases from out-of-Circuit district courts that grant *summary judgment* due to a plaintiff's failure to perform a skin allergy test, similar to or identical to the one described in its label.[8]  (Dkt. No. 7, Attach. 1, at 18.)  The reason that

---

[8]  The court will also note that, similarly, New York case law states that a plaintiff has the burden to establish "that [she] would have read and heeded a [different] warning had one been given."  *Sosna v. Am. Home Prod.*, 298 A.D.2d 158, 158 (1st Dep't 2002).  And, when "undisputed facts show that the plaintiff did not bother to read the manufacturer's existing warnings prior to using the product, plaintiff cannot establish the critical element of proximate

summary judgment in these cases is granted is because a plaintiff is

unable to establish proximate causation if they cannot show that they

heeded an existing warning.  *See Smallwood v. Clairol, Inc.*, No. 03-CV-

8394, 2005 WL 425491, at *2 n.5 (S.D.N.Y. Feb. 18, 2005) (citing *Sosna v.*

*Am. Home Prod.*, 298 A.D.2d 158, 158 (1st Dep't 2002)).  The logic is

simple: if a plaintiff has not read the existing warning, which they claim is

deficient, how can they assert that a different warning would have made

any difference?

The flaw in Madison Reed's argument is that this action has not

reached the appropriate procedural posture to apply this theory—each of

the cases discussed concerns the summary judgment phase, while the

instant motion concerns dismissal for failure to state a claim.  Indeed, as

New York State courts and federal courts in this district interpreting New

York law have held, "[f]ailure to warn is typically a fact-intensive inquiry for

the jury to decide."  *Viscusi v. Proctor & Gamble*, No. 05-CV-01528, 2007

WL 2071546, at *12 (E.D.N.Y. July 16, 2007), *aff'd by Viscusi v. P &*

*G-Clairol, Inc.*, 346 F. App'x 715 (2d Cir. 2009) (citing *Liriano*, 92 N.Y.2d at

---

cause and summary judgment should be granted."  *Smallwood v. Clairol, Inc.*, No. 03-CV-
8394, 2005 WL 425491, at *2 n.5 (S.D.N.Y. Feb. 18, 2005) (citing *Sosna*, 298 A.D.2d at 158).
Of course, as this quote explicitly acknowledges, this is a question to be resolved at the
summary judgment phase, not on a motion to dismiss.  *See id.*

242); *see Walczak v. Cortos Bros., II*, 13 Misc. 3d 1241(A), 831 N.Y.S.2d 357, at *2 (Sup. Ct. 2006), *aff'd by Walczak v. Corto Bros., II*, 45 A.D.3d 1360 (2007).  And, as demonstrated recently by the Eastern District of New York, denial of a motion to dismiss a failure to warn claim is appropriate "in all but the most unusual circumstances."  *Candelaria*, No. 21-CV-6760, 2023 WL 2266047, at *4.[9]  This disinclination to

dismiss a failure to warn claim is logical because courts "would otherwise be called upon to resolve a factual question as to the adequacy and accuracy of product warnings."  *Walczak*, 13 Misc. 3d 1241(A), 831 N.Y.S.2d 357, at *2.  Accordingly, at this stage, the court cannot dismiss Moore's failure to warn claim, and Madison Reed's motion is denied in this regard.

## F.   <u>Negligent Design Defect</u>

Madison Reed moves to dismiss Moore's second and fourth causes of action, which are premised on a design defect theory,[10] because, as

---

[9]   On March 2, 2023, Moore requested that the court consider newly-available authority in support of her motion to dismiss, this authority being *Candelaria*.  (Dkt. No. 20.)  The court granted this request, (Dkt. No. 21), and Madison Reed responded, indicating that it does not object to consideration of *Candelaria*, (Dkt. No. 22).

[10]   Although Moore's second cause of action is labeled "negligence" and not explicitly "design defect," as her fourth cause of action is, both causes of action rely on the same allegations and are styled as claims for negligent design defect.  (Dkt. No. 3 ¶¶ 170-80, 196-207.)  In fact, Moore concedes that these claims are "largely supported by the same

Madison Reed contends, Moore has not alleged that the Products are unreasonably dangerous, that she heeded the Products warning, or any safer alternative design for the Products.  (Dkt. No. 7, Attach. 1 at 19-21.) Moore argues that the Products were designed with the replacement ingredients that she has alleged are "just as bad or less safe" than those they replace, that these ingredients present a substantial likelihood of harm, and, thus, that "it goes without saying" the Products could have been designed more safely.  (Dkt. No. 12 at 17-21.)  Moore also argues that she suffered hair loss that would not have been detected by performing the patch test.  (*Id.* at 19.)

   "To prove negligent design, a plaintiff must demonstrate that the product defect was a substantial factor in causing the injury, and that it was feasible to design the product in a safer manner."  *Kosmynka v. Polaris Indus., Inc.*, 462 F.3d 74, 80 (2d Cir. 2006) (internal quotation marks and citations omitted).  That is, the plaintiff must show that (1) the product, as designed, posed a substantial likelihood of harm; (2) it was feasible to design the product in a safer manner; and (3) the defective design was a substantial factor in causing plaintiff's injury. *See Voss v. Black & Decker*

---

allegations" and applies her arguments to both causes of action.  (Dkt. No. 12 at 12, n.3.) Therefore, the court will analyze and apply these arguments as to both causes of action.

27

*Mfrg. Co.*, 59 N.Y.2d 102, 108 (1983).  New York courts, for the purposes of analyzing a design defect claim, treat the theories of strict liability and negligence virtually identically.  *See Lancaster Silo & Block Co. v. N. Propane Gas Co.*, 75 A.D.2d 55, 62 (4th Dep't 1980) ("[I]n a design defect case there is almost no difference between a prima facie case in negligence and one in strict liability.") (citations omitted); *Denny v. Ford Motor Co.*, 87 N.Y.2d 248, 258 (1995).

Merely alleging that a product is inherently dangerous is insufficient to establish a design defect— "the [p]laintiff must plead facts alleging the existence of a feasible alternative design."  *Guariglia v. Procter & Gamble Co.*, No. 2:15-CV-04307, 2018 WL 1335356, at *3 (E.D.N.Y. Mar. 14, 2018); *see Green v. Covidien LP*, 18 Civ. 2939, 2019 WL 4142480, at *3 (S.D.N.Y. Aug. 30, 2019) (holding that plaintiff failed to state a claim for design defect because the amended complaint did not sufficiently plead the existence of a feasible alternative design).  As described above, Madison Reed has argued that Moore does not "allege any safer alternative design, as she must to plead this claim."  (Dkt. No. 7, Attach. 1, at 21.)  Moore does not respond to this argument by pointing to allegations in the amended complaint.  Instead, Moore argues that the necessity of a

safer alternative design is implied by her allegations that the current design is unsafe.  (Dkt. No. 12 at 18-20.)

Here, Moore fails to plead a design defect claim.  She pleads, in a conclusory manner, that "[i]t was feasible to design the products in a safer manner, including with ingredients and a formulation that did not cause adverse reactions."  (Am. Compl. ¶ 205.)  Absent from the amended complaint are facts, beyond these mere conclusory allegations, that indicate an alternative design that Madison Reed could have used.  Moore's allegations are insufficient to support the design defect claims.  *See Green*, No. 18 Civ. 2939, 2019 WL 4142480, at *3 ("Simply asserting that a feasible alternative design exists—without pleading any supporting facts—is not sufficient to plead a defective design claim or to put [a d]efendant on notice as to what that design might be.")

Not only do Moore's threadbare allegations that an alternative design exists, without any indication as to what that design may be, fail to state a claim, her argument that an alternative design was feasible is belied by her own allegations.  Moore's design defect claims hinge on the allegation that the Products are defective because the ingredients that replaced ammonia, PPD, and resorcinol were not safer.  (Am. Compl. ¶ 198; Dkt. No. 12 at

20.)  Yet, Moore explicitly alleges that these ingredients "would need to be replaced with an ingredient that performs a similar function."  (Am. Compl. ¶¶ 14-15.)  If the replacements for ammonia, PPD, and resorcinol would necessarily perform a similar function, it does not follow that any formulation of permanent hair dye could possibly be "alternative" in the ways Moore would demand.

The court need not reach the parties' other arguments, as Moore's failure to plead an adequate alternative design is fatal to these claims.  For these reasons, the motion is granted as to Moore's second and fourth causes of action sounding in design defect.

## G.    Rule 8

Madison Reed argues that the amended complaint violates Rule 8 of the Federal Rules of Civil Procedure because of its length and inclusion of numerous online consumer complaints that span dozens of pages.  (Dkt. No. 7, Attach. 1, at 24-25.)  Moore contends that she has not violated Rule 8 because the inclusion of online consumer complaints was reasonable, that the amended complaint "is not confusing, ambiguous, vague, or otherwise unintelligible," and that the substantive allegations therein are not duplicative.  (Dkt. No. 12 at 24.)

Rule 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. Proc. 8(a)(2).  The court has the power to strike portions of or outright dismiss a complaint that "does not comply with the requirement that it be short and plain."  *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (citing Fed. R. Civ. P. 12(f)).  "However, violations of Rule 8 are found only in extreme circumstances."  *A.S. v. City Sch. Dist. of Albany*, 585 F. Supp. 3d 246, 266, n.7 (N.D.N.Y. 2022) (collecting cases).  And dismissal "is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised."  *Salahuddin*, 861 F.2d at 42 (citation omitted).

The amended complaint does not violate Rule 8.  While it is over 100 pages long, the amended complaint is not "so confused, ambiguous, vague, or otherwise unintelligible" so as to create an "extreme circumstance" where dismissal is warranted.  *See A.S.*, 585 F. Supp. 3d at 266, n.7; *Salahuddin*, 861 F.2d at 42.  Therefore, Madison Reed's motion to dismiss is denied with respect to its arguments regarding Rule 8.

## V. <u>Conclusion</u>

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Madison Reed's motion to dismiss, (Dkt. No. 7), is **GRANTED IN PART** and **DENIED IN PART** as follows:

**GRANTED** as to the first cause of action for a violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301; the second cause of action for negligence; the fourth cause of action for design defect; the fifth cause of action for negligent misrepresentation; and the eighth cause of action for fraud; and

**DENIED** in all other respects; and it is further

**ORDERED** that the following claims remain: (1) third cause of action for failure to warn; (2) sixth cause of action under N.Y. Gen. Bus. Law § 349; and (3) seventh cause of action under N.Y. Gen. Bus. Law § 350; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

August 9, 2023
Albany, New York

Gary L. Sharpe
U.S. District Judge